## DESHLER HOTEL CO. v. BUSEY, Collector of Internal Revenue.

### No. 3823.

District Court, S. D. Ohio, E. D.

Jan. 14, 1941.

Butler & Summer, of Columbus, Ohio, for plaintiff.

Francis C. Canny, U. S. Atty., of Dayton, Ohio, and Loren G. Windom, Asst. U. S. Atty., of Columbus, Ohio, for defendant.

UNDERWOOD, District Judge.

The parties hereto having waived a jury trial, this cause was tried to the court upon an agreed statement of facts which the court adopts and includes among its own findings of facts.

Briefly, the facts may be stated as follows: the Deshler Hotel Company, plaintiff herein, commenced this action against the defendant to recover a penalty assess-

ment with interest thereon, covering the period from August, 1934, to and including January, 1937, levied under Section 1114 (d) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 325, for failure to collect the taxes imposed by Section 500 (a) (5) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, pages 269, 272, covering that period.

The plaintiff operates a large, first-class hotel in the City of Columbus, Ohio, and in connection therewith maintains, for the benefit and use of its guests and the public, three dining rooms or restaurants, namely: The Sapphire Room, The Spanish Room and The Ionian Room.

Since January 1, 1934, the plaintiff has offered dance music during the dinner and late supper hours in its Ionian Room, and at such times a space in front of the orchestra platform was cleared of tables so that patrons of the dining room might dance. Frequently members of the orchestra were featured as instrumental or vocal soloists as a part of the dance music. These soloists always remained on the platform and did not mingle with the patrons. That the Ionian Room furnished dance music for its patrons was made known to the residents of Columbus through advertising in local newspapers.

During the period involved there was no cover, minimum, door charges, or special charges made upon persons entering the Ionian Room. The only charges made were for whatever food, service, or refreshments such persons chose to purchase. Persons dining in either of the other two restaurants were permitted to use the dancing facilities of the Ionian Room without charge. Prices in the Spanish Room and in the Sapphire Room were higher than in the Ionian Room; but the former were more exclusive and featured better and more elaborate service.

The questions presented in this suit involve the Ionian Room only. The plaintiff contends that the Ionian Room is not a roof garden, cabaret or other similar entertainment and that the orchestra featured at supper and for the evening hours is not a public performance for profit. The plaintiff further contends that there is no charge for admission, either in whole or in part included in the price paid for refreshment, service, or merchandise and that Article 11 of the Regulations of the Bureau of Internal Revenue, if it

does bring the plaintiff within the scope of the act, is void as going beyond the scope of the statute.

It is the contention of the government that the business conducted by the plaintiff in the Ionian Room does come within the terms of the regulation and the statute, and that the regulation is valid.

The operative facts having been stipulated it remains for the court to determine the ultimate facts and the principal issue of law; that is, whether or not by the terms of Section 500 (a) (5) of the Revenue Act of 1926, and Regulation 11, the plaintiff should have collected an amusement tax in the Ionian Room for the period in question. If the plaintiff should have collected the tax, then the penalty was properly assessed and there can be no recovery in this action. On the other hand, if the plaintiff was not bound to collect the tax under the law and the regulation, then the plaintiff is entitled to recover back the penalty paid.

Section 500 (a) in so far as applicable, reads as follows: "On and after the date this title takes effect, there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 500 of the Revenue Act of 1924 * * * (5) a tax of 1½ cents for each 10 cents or fraction thereof of the amount paid for admission to any public performance for profit at any roof garden, cabaret, or other similar entertainment, to which the charge for admission is wholly or in part included in the price paid for refreshment, service, or merchandise; the amount paid for such admission to be deemed to be 20 per centum of the amount paid for refreshment, service, and merchandise; such tax to be paid by the person paying for such refreshment, service, or merchandise. Where the amount paid for admission is 50 cents or less, no tax shall be imposed."

This statute must of necessity be considered in detail. The consideration of applicable statutes is important in deciding any case, but here the statute and the regulation are virtually the only authority as the reported cases shed but little light upon the question before the court.

In the main, the terms of the statute are clear and unambiguous. It is readily apparent that it contains four essential requirements and that all of these must be present before the tax can be required. These essentials may be enumerated as

follows: (1) There must be a charge made for admission, which may be wholly or in part included in the price paid for refreshment, service, or merchandise; (2) The admission must be to a public performance; (3) The performance must be for profit; and (4) The performance must be at a roof garden, cabaret or other similar entertainment. If the circumstances under which the plaintiff operated conformed to all four of these requirements, then the penalty was properly assessed and collected and the plaintiff has no remedy.

█ In connection with the statute, Treasury Regulation 43, Article 11, promulgated under the Revenue Act of 1926, must also be considered. This may be quoted as follows: " 'Any public performance for profit at any roof garden, cabaret, or other similar entertainment' includes every public vaudeville or other performance or diversion in the way of acting, singing, declamation, or dancing, either with or without instrumental or other music, conducted for the profit of the management by professionals, amateurs, or patrons under the auspices of the management, in connection with the service of selling of food or other refreshment or merchandise at any room in any hotel, restaurant, hall, or other public place. Every form of entertainment so conducted is included, except instrumental music unaccompanied by any other form of entertainment."

This regulation was made pursuant to Section 1101 of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 315, which gave to the Commissioner of Internal Revenue, with approval of the Secretary of the Treasury, full authority to prescribe and publish all needful rules and regulations for the enforcement of the act. Regulation 43, has been in force since 1926. Similar regulations were promulgated for substantially the same tax in earlier revenue acts, from 1917 to 1926. Since 1926 the provisions of Section 500 (a) (5) and the regulation have remained the same. Under these circumstances, it follows as a matter of law, that the regulation, in so far as it is authorized by the terms of the act, must be deemed to have been given legislative approval, and to that extent, it is to be considered as a part of the law. United States v. Dakota-Montana Oil Co., 288 U.S. 459, 466, 53 S.Ct. 435, 77 L.Ed. 893; Murphy Oil Co. v. Burnet, 287 U.S. 299, 53 S. Ct. 161, 77 L.Ed. 318; Brewster v. Gage, 280 U.S. 327, 337, 50 S.Ct. 115, 74 L.Ed.

457; Helvering v. Reynolds Co., 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536.

█ By the express terms of the regulation, it is limited to definition of the provision, "Any public performance for profit at any roof garden, cabaret, or other similar entertainment." Obviously the regulation can have no effect on the first three requirements of the act, that is, that a charge for admission must be made; that the performance be a public one; and that it be for profit. This is true for two very good reasons; first, because the act is definite and unambiguous in these respects and no room is left for administrative interpretation; and second, the regulation does not purport to define the first three requirements, but merely repeats them as contained in the act. Where the law is plain, the subsequent re-enactment of the statute does not constitute adoption of its administrative construction. Biddle v. Commissioner, 302 U.S. 573, 582, 58 S.Ct. 379, 82 L.Ed. 431; Iselin v. United States, 270 U.S. 245, 46 S.Ct. 248, 70 L.Ed. 566; Louisville & N. R. Co. v. United States, 282 U.S. 740, 51 S.Ct. 297, 75 L.Ed 672; Helvering v. New York Trust Co., 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361. Neither does a regulation become a part of the law, if the Congress has not left the issue in question open to administrative interpretation. United States v. Standard Brewery, 251 U.S. 210, 40 S.Ct. 139, 64 L.Ed. 229.

Considering now the act and the regulation as they must be applied to the facts of this case, it is clear that the law, as a prerequisite to imposition of the tax, requires that there must be a charge for admission, which may be wholly or in part included in the price paid for refreshment, service, or merchandise. This is the first essential requirement of the act. It has not been changed by regulation and it cannot be so changed by regulation as to eliminate the requirement of an admission charge. In this respect the law is definite and no room is left for administrative interpretation; there must be a charge for admission.

The stipulated facts in the instant case show that the plaintiff made no cover charges, minimum charges, door charges, or special charges; therefore, there could have been no direct charge for admission. Persons might enter the Ionian Room, remain there for a time, and leave again without paying, or becoming liable for the

payment of any sum whatever. There remains only the possibility that some sort of an admission charge might be included in the price of food, service, or merchandise purchased. This is refuted by the facts of the case. The evidence is to the contrary and the court must of necessity find that the first essential prescribed by the act in establishing liability for the tax is missing. There was no charge made for admission, either included in the prices paid or in any other guise, and this the court states as a finding of fact.

The second requirement of the statute is that the performance in question must have been a public performance. Here again the law is clear and not subject to administrative interpretation. The expression "public performance" has an ordinary and accepted meaning, readily understandable. The context does not indicate that any other meaning is intended and the term is not defined by the regulation. We may therefore accept the intent of Congress as being that the ordinary meaning of the phrase shall be used. The evidence shows, and the court determines and states as a finding of fact, that the performances in question were "public performances."

The third requirement of the statute is that such public performances must have been for "profit". The same word is used in the regulation without any attempt to define it. The court is both entitled and required to give it the usual and accepted meaning. Since it has been found that no admission charge in any form was made, it follows as a matter of logic, that the performances could not have been given for a direct profit. Rather it would appear that the entertainment was furnished at the expense of the hotel as an ordinary accompaniment of the service of food and refreshment in the manner customary to hotels of the class to which the plaintiff belongs; something expected by the customer and essential to good and profitable business relations, but in itself yielding no profit. In this case, the expense of the entertainment was an overhead expense incidental to the class of business in which the plaintiff was engaged. This court is therefore of the opinion and holds as a finding of fact, that such performances were not for profit in any accepted sense of the word, but that the expense involved was borne by the plaintiff as overhead. In general, it may be said that no commercial firm undertakes expenditures in the form of overhead without expecting a profit from the business in which the expenditures are made, but it is not from these overhead items that profit is derived. The profit is derived from the business itself and it is partially consumed by the overhead expenses; hence, such items are, in themselves, items of expense and not of profit.

In view of the foregoing findings and conclusions, the court deems it unnecessary to consider the fourth requirement of the act, in as much as the result of such consideration could not change the final determination in this case.

It is the conclusion and opinion of this court that the preponderance of the evidence in this case shows that the performances in question were not given for profit and that no admission charge was made, included in the price charged for food, service, or otherwise. It follows that the penalty was improperly assessed, and that the plaintiff is entitled to recover the amount paid in satisfaction thereof. Judgment for the plaintiff in the sum of $6,056.-70, with interest at the rate of six per cent per annum from August 26, 1937, until paid, and for costs herein.